UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
ANDRE DAVIS,

                Plaintiff,

-against-

THE CITY OF NEW YORK, POLICE OFFICERS JOHN/JANE DOE(S) #s 1-10, POLICE OFFICER JOHN DOE from the 75th Precinct identified by Badge #27236, POLICE OFFICER TERRANCE LLOYD, Shield #10760, KRISTEN SCHAFFER,

                Defendants.
---------------------------------------------------x

**MEMORANDUM & ORDER**

15-cv-4684 (FB) (RER)

*Appearances:*
*For the Plaintiffs:*
DAVID A. ZELMAN
612 Eastern Parkway
Brooklyn, New York 11225

*For the Defendant:*
ELISSA PAULETTE FUDIM
Corporation Counsel of The City of New York
100 Church Street
New York, New York 10007

**BLOCK, Senior District Judge:**

    Andre Davis ("Davis") sued the City of New York, John/Jane Doe Officers 1-10, Officers Terrance Lloyd and Oscar Ramos, and Sergeant Kristin Schafer (collectively "Defendants") under 42 U.S.C. § 1983 for false arrest, excessive force, failure to intervene, and excessive pre-arraignment detention and under state law for assault and battery and *respondeat superior*. Defendants answered the Amended Complaint on

June 17, 2016, and now move for summary judgment. Davis opposes the motion and moves for partial summary judgment on his false arrest claim. For the reasons discussed below, the Defendants' motion is granted in part and denied in part and Davis's motion is denied in its entirety.

# I.

The parties submitted evidence, including deposition testimony, of the following facts, which, unless otherwise noted, are not in dispute.

At 3:42 p.m. on March 25, 2015, Officers Lloyd and Ramos stopped Davis and a man later identified as Cassie Fernandez ("Fernandez") for questioning after a 911 caller reported the theft of a side mirror from his uncle's car. During his conversation with Officer Lloyd, Davis began to make a video recording with his cell phone. A group of unidentified officers who were patrolling the area stopped to assist Officer Lloyd. One of them attempted to take Davis's phone, and a struggle ensued. Officer Lloyd testified that Davis was swinging his phone in a violent manner and screaming, "You better not fucking touch me, there will be a problem." Def.'s Fudim Decl. Ex. 1 at 20:18-21:9. However, Davis testified that he was calmly filming the interaction. *See* Pl.'s Zelman Decl. Ex. B at 33:13-34:13.

A video, which was submitted by the parties and reviewed by the Court, shows one of the officers shoving Davis against a store-front security gate and another hitting

Davis's hand against the gate and twisting his arm. Def.'s Fudim Decl. Ex. 15. Davis testified that his arm "felt like it was about to snap." *Id.* Ex. 6 (Davis Dep.) at 40:5-40:12. Davis further testified that, after the officers took his phone and placed him in handcuffs, they punched and kicked him; however, Officers Lloyd and Ramos deny doing so.

The 911 caller appeared for a show-up identification but stated that Davis was not one of the men who had stolen the mirror. The officers put Davis in the back of a squad car. Davis told them that he wanted to go to the hospital because his arm was bleeding and he felt like it was broken. Officer Lloyd testified that, while Davis was in the squad car, he "was quoting God, he was quoting the scriptures from the Bible, [and saying] that he didn't want to live anymore and he wanted to kill himself," causing Officer Lloyd to believe that Davis was emotionally disturbed. *See* Def. Fudim Decl. Ex. 1 at 28:14-29:21. However, Davis denies making suicidal statements. *See* Pl.'s Zelman Decl. Ex. H ¶¶ 4. An ambulance arrived and took Davis to the hospital, where he remained in handcuffs for an additional 45 minutes.

Davis was diagnosed with musculoskeletal pain, prescribed two medications, and instructed to follow up with an orthopedist. He was not treated or evaluated for any psychiatric conditions. He was released from the hospital at 7:45 p.m. and was not charged with any crime. Davis testified that he continued to experience slight pain in

his foot and back and headaches for a year after incident.

## II.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson*, 477 U.S. at 255, "[t]he non-moving party may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998).

**A. False Arrest**

Genuine disputes of material fact preclude summary judgment to either party on Davis's false arrest claim.

The parties dispute what Officers Lloyd and Ramos knew at the time they stopped Davis, and, thus, whether the stop was supported by a reasonable suspicion that he was involved in a crime. *See Adams v. Williams*, 407 U.S. 143, 145-46 (1972) (citing *Terry v. Ohio*, 392 U.S. 1, 21-22, 23 (1968)) (stating that a brief stop of a "suspicious individual" may be reasonable "in light of the facts known to the officer at

the time"). Defendants argue that they had probable cause to handcuff and detain Davis for disorderly conduct under N.Y. Penal Law 240.20(1) for violently swinging his phone at the officers.[1] *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (stating that probable cause is a defense to a false arrest claim, defining probable cause). However, the parties dispute whether Davis swung his phone or was violent, and, contrary to Defendants' assertions, the video does not resolve the dispute because Davis was partially obstructed from the camera's view. Finally, Defendants argue that the officers were authorized to detain Davis and transport him to the hospital under New York Mental Hygiene Law § 9.41[2] based on the suicidal comments he made while sitting in the back of the police car, but Davis denies making any such statements.

Both parties' motions for summary judgment as to Davis's false arrest claim are

---

[1] N.Y. Penal Law 240.20 provides:

A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:
1. He engages in fighting or in violent, tumultuous or threatening behavior; or
2. He makes unreasonable noise; or
3. In a public place, he uses abusive or obscene language, or makes an obscene gesture; or
4. Without lawful authority, he disturbs any lawful assembly or meeting of persons; or
5. He obstructs vehicular or pedestrian traffic; or
6. He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse; or
7. He creates a hazardous or physically offensive condition by any act which serves no legitimate purpose.
Disorderly conduct is a violation.

[2] N.Y. Mental Hygiene Law § provides that "Any . . . police officer who is a member of the state police or of an authorized police department or force or of a sheriff's department may take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others."

therefore denied.

## B. Excessive Force

Genuine disputes of fact preclude summary judgment on Davis's excessive force claim. The parties dispute the amount of force applied, and— again— the video does not resolve the dispute. *See Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (stating that whether the amount of force used is excessive is analyzed under the Fourth Amendment's "reasonableness standard"). Davis testified that he was punched and kicked after he was handcuffed, but the first video ends immediately after he was placed in handcuffs. The second starts some time later. The video is therefore not inconsistent with Davis's testimony. And the amount of force the video does show is significant.

The parties also dispute whether Davis posed any threat to the safety of the officers. *See id.* (listing factors relevant to reasonableness, including whether the suspect poses an immediate threat to the safety of the officers or others). Officer Lloyd testified that Davis was violently waving his phone and that he had spoken threatening words, but Davis stated that he was calm before the officers applied force.

These disputed issues preclude summary judgment on Davis's excessive force claim.

## C. Failure to Intervene

Summary judgment on Davis's failure to intervene claim is appropriate as to some Defendants but not others.

It is undisputed that Sergeant Schaffer was supervising Officers Lloyd and Ramos and that she arrived on the scene while Davis was sitting handcuffed in the back of a squad car. And Officer Ramos was questioning Fernandez a few feet away while Davis was struggling with the other officers present and while he was being handcuffed. Considering that summary judgment is improper on Davis's excessive force and false arrest claims, these facts raise a genuine dispute as to whether Sergeant Schaffer failed to intervene in Davis's false arrest and whether Officer Ramos failed to intervene in the use of excessive force by the other officers on the scene. *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."). However, Davis has not alleged, much less established, any facts showing that the other officers failed to intervene to prevent constitutional violations by their fellow officers.

Similarly, Davis has submitted no evidence in support of his claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694-95 (1978), that his constitutional injuries were the result of an official policy or custom of the City. His vague and conclusory allegations are insufficient to overcome summary judgment. *See*

*Sullivan v. City of New York*, 690 Fed. App'x 63, 67 (2d Cir. 2017) (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993)) (holding that conclusory allegations are insufficient to defeat a motion for summary judgment dismissing a *Monell* claim).

Summary judgment is therefore granted to Defendants on Davis's *Monell* claim and to Officers Lloyd and John/Jane Does 1-10 on Davis's claim for failure to intervene. Davis's failure to intervene claim against Officer Ramos and Sergeant Schaffer may proceed.

**D. Excessive Detention**

Under the Fourth Amendment, a detention of more than 48 hours without a probable cause hearing is presumptively unreasonable. *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 56-57 (1991). A delay of less than 48 hours may be unconstitutional if the plaintiff can prove that it was unreasonable. As the Supreme Court held in *McLaughlin*:

> Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake. In evaluating whether the delay in a particular case is unreasonable, however, courts must allow a substantial degree of flexibility. Courts cannot ignore the often unavoidable delays in transporting arrested persons from one facility to another, handling late-night bookings where no magistrate is readily available, obtaining the presence of an arresting officer who may be busy processing other suspects or securing the premises of an arrest, and other practical realities.

*Id.* Davis was detained for approximately four hours without a probable cause hearing. Defendants offer various reasons for their delay in either making a probable cause determination or releasing Davis, including that the officers were deciding whether to charge him with disorderly conduct and that they were concerned for his safety based on signs that he was emotionally disturbed. Davis disputes each of these factual contentions. The purpose of the Defendants' delay and, thus, whether he was detained for an unreasonable period are questions for the jury. Summary judgment on Davis's excessive detention claim is denied.

**E. State Law Claims**

Defendants argue that Davis's state law claims for assault and battery and *respondeat superior* liability should be dismissed because the officers' use of force was privileged. An unlawful arrest is not privileged. *See Johnson v. Suffolk Cty. Police Dep't*, 245 A.D.2d 340, 341 (1997). As discussed above, genuine disputes of fact exist as to whether Davis's arrest was lawful. Summary judgment on the basis that Defendants' use of force was privileged is therefore inappropriate.[3]

**III**.

---

[3] Defendants also argue that Davis's state law claims should be dismissed under N.Y. Gen. Mun. Law § 50-h, which requires a plaintiff to comply with the City's timely request for a hearing before commencing suit. N.Y. Gen. Mun. Law § 50-h(5). In a bench ruling, the Court denied summary judgment on this basis without prejudice to renewal at trial, if appropriate.

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED as to Davis's *Monell* claim and his failure to intervene claim against Officers Lloyd and John/Jane Does 1-10. Defendants' motion is DENIED in all other respects. Davis's motion for summary judgment is DENIED.

SO ORDERED

                                                /S/ Frederic Block
                                                FREDERIC BLOCK
                                                Senior United States District Judge

Brooklyn, New York
September 28, 2017