UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
ANDRE DAVIS,

    Plaintiffs,

    -against-

THE CITY OF NEW YORK, POLICE
OFFICER TERRANCE LLOYD,
SHIELD #27336, POLICE OFFICER
OSCAR RAMOS, SHIELD #10760,
SERGEANT KRISTEN SCHAFFER,
SHIELD #07860, POLICE OFFICERS
JOHN/JANE DOE(S) #1-10,

    Defendants.
---------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 15-CV-4684-FB-JO

*Appearances*:
*For the Plaintiffs*:
DAVID A. ZELMAN
Law Office of David A. Zelman
612 Eastern Parkway
Brooklyn, New York 11225

*For the Defendant*:
ZACHARY CARTER
Corporation Counsel of the City of
New York
By: ELISSA FUDIM
100 Church Street
New York, New York 10007

**BLOCK, Senior District Judge:**

    After a five-day trial, the jury in this action under 42 U.S.C. § 1983 rendered a verdict finding that the plaintiff, Andre Davis, was not falsely arrested, excessively detained or subjected to excessive force. Davis now moves for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 or, in the alternative, for a new trial pursuant to Federal Rule of Civil Procedure 59.

1

Davis's sole challenge to the verdict is that the evidence compelled the conclusion that there was no reasonable suspicion supporting the initial stop that led to his arrest.[1]  The evidence at trial established that a 911 caller reported that a Hispanic male accompanied by a black male had stolen a mirror from a car.  The report of the call noted that the Hispanic male was wearing a red and black sweatshirt, blue jeans, and yellow Timberland boots; it did not describe the black male's clothing.  It further noted that the Hispanic male had fled on foot while the black male had fled in a green Suburban.

Officers Terrance Lloyd and Oscar Ramos responded to the call three or four minutes later.  They found and spoke to the 911 caller, who described the perpetrators as a "black male and a Spanish male."  Pl.'s Mem. of Law, Ex. A. at 12.  He did not describe the clothing of either man but said that they had just walked around the corner.  When the officers turned the corner, they saw a black man—Davis—walking within a few feet of a Hispanic man down an otherwise empty block.  The Hispanic man was wearing a red jacket and blue jeans; Davis had a bookbag.

---

[1] On a Rule 50 motion the evidence must be viewed in the light most favorable to the party who prevailed at trial.  *See Arlio v. Lively*, 474 F.3d 46, 51 (2d Cir. 2007).  A Rule 59 motion does not impose that requirement, but a court should not grant a new trial "unless it is convinced that the jury reached a seriously erroneous result or that the verdict is a miscarriage of justice."  *Ali v. Kipp*, 891 F.3d 59, 64 (2d Cir. 2018) (citation, internal quotation marks and alteration omitted).

Davis cites *Dancy v. McGinley*, 843 F.3d 93 (2d Cir. 2016), for the proposition that "race, when considered by itself and sometimes even in tandem with other factors, does not generate reasonable suspicion for a stop." *Id.* at 109 (quoting *United States v. Swindle*, 407 F.3d 562, 569-570 (2d Cir. 2005)). The plaintiffs in *Dancy* were stopped walking down a busy street several blocks from an attempted robbery. A police report described the perpetrator as "a thin, black male wearing a brown jacket traveling in an unknown direction." *Id.* at 109. One of the plaintiffs was thin and black but wearing a camouflage jacket. The Second Circuit held that the stop was not supported by reasonable suspicion.

Several facts distinguish this case from *Dancy*. The 911 call here described two men, while the call in *Dancy* "did not mention a second assailant or accomplice." *Id.* Davis was seen near a Hispanic man wearing a red top and blue jeans, though not yellow boots; the clothing description in *Dancy* did not match either plaintiff at all. Perhaps most significantly, the plaintiffs in *Dancy* were found several blocks from the crime scene in "innocuous" circumstances. *See id.* ("It would not have been unusual to find a thin, black male in downtown Poughkeepsie that Friday evening."). The complaining witness here told the officers that the two men had just turned the corner. That is precisely where Davis and the Hispanic man were found, with no one else around.

In sum, the Court disagrees that Davis's race was the main or only factor supporting the stop. He is black and male, but he was also walking near a Hispanic man wearing most of the clothing described in the 911 call. He was found where the complaining witness said the perpetrators had gone, in circumstances where he did not simply blend into a crowd. Davis argues that it took the officers several minutes to arrive at the scene, but Officer Lloyd testified that the witness was "adamant that they had just turned the corner." Pl.'s Mem. of Law, Ex. A. at 13. He further argues that the report of the 911 call stated that the black male had fled in a green Suburban. Officer Lloyd testified that he felt the witness's on-site statement was "ten times more reliable than the 911 call [because s]ometimes the operators mess up and make mistakes." *Id.* at 15. Officer Ramos testified that he did not recall the green Suburban being mentioned during the call; he acknowledged that it appeared in the report of the call, but stated that he "just didn't hear it." *See* Pl.'s Mem. of Law, Ex. B at 81.

The officers' credibility was a matter for the jury, not grounds for judgment as a matter of law or a new trial. Accordingly, Davis's motion is denied.

**SO ORDERED.**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
April 16, 2019